**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

DIXIE HOMECRAFTERS, INC.,     :
and GUTTERGUARD, LLC,     :
                                           :
              Plaintiffs,     :
                                           :   CIVIL ACTION NO.
        v.                   :   1:08-CV-0649-JOF
                                           :
HOMECRAFTERS OF AMERICA,     :
LLC, et al.,     :
                                           :
              Defendants.     :

**<u>OPINION AND ORDER</u>**

This matter is before the court on Defendants' motion to dismiss [7]; Defendants' motion for judgment [8]; and Defendants' motion for oral argument [19].

**I.    Background**

**A.    Procedural History**

Plaintiff, Dixie HomeCrafters, Inc., and Gutterguard, LLC, filed suit against Defendants, HomeCrafters of America, LLC, HomeCrafters of America, Inc., American Home Crafters, LLC, Joseph Mazur, Peter Siconolfi, Matt Golonka, Kim Golonka, Matt Hess, Robert Michael Famous, and Carmine Rego, on February 27, 2008, alleging generally that the individual Defendants committed tortious acts and unlawfully competed with Plaintiffs by diverting customers and employees from Plaintiffs to a competing business

secretly created and operated by Defendants – HomeCrafters of America, LLC, later known as HomeCrafters of America, Inc. Plaintiffs' alleged causes of action include: breach of employment contract; misappropriation of trade secrets; unfair trade practices and unfair competition; tortious interference with business and contractual relationships; fraud; conversion, federal RICO, Georgia FICO; breach of fiduciary duties and deprivation of corporate opportunities; violation of the Georgia Computer Systems Protection Act; punitive damages; and attorney's fees.

Plaintiffs are affiliated companies headquartered in Chamblee, Georgia. Plaintiffs provide home improvement products and services and have offices in several states in the eastern United States. Six of the seven individual Defendants (the "Employee Defendants") previously worked at Plaintiffs' office in King of Prussia, Pennsylvania. Mazur, Matt Golonka, and Hess were General Managers at the office; Famous was a sales representative and Assistant General Manager; and Kim Golonka was a Home Show Coordinator. Plaintiffs allege that Carmine Rego, an individual Defendant, conspired with the Employee Defendants to commit the tortious acts alleged in the complaint. The instant motion to dismiss relates to issues of personal jurisdiction.

**B. Facts**

    1.    <u>Joseph A. Mazur, Jr.</u>

Joseph A. Mazur testified that he is a resident of Pennsylvania and has never been to Georgia. *See* Mazur Aff., ¶¶ 1-2. He does not presently own or lease any property in Georgia. *Id.*, ¶ 3. He stated that he has not personally, nor on behalf of HomeCrafters of America, LLC, HomeCrafters of America, Inc., or American Home Crafters, LLC, transacted any business in Georgia. *Id.*, ¶ 7. He has also not been to Georgia in connection with any business for those three companies. *Id.*, ¶ 8. He was first employed by Dixie HomeCrafters in July 2002. *Id.*, ¶ 4. Mazur states that he signed his Employee Confidentiality and Non-Disclosure Agreement in King of Prussia, Pennsylvania in December 2004 and that he did not receive anything in return for signing the Agreement. *Id.*, ¶¶ 5-6.

Hugh Harris, the Chief Executive Officer of Dixie HomeCrafters, Inc., and GutterGuard, LLC, testified that Mazur was the General Manager of the King of Prussia facility overseeing all of its operations from July 12, 2002 until his resignation on July 23, 2007. *See* Harris Aff., ¶ 9. Prior to the time Mazur moved to the King of Prussia facility, he worked in the Atlanta area for nine months. *Id.*, ¶ 10. Plaintiffs paid for his lodging while he was training. *Id.* While he was General Manager, Mazur had frequent and continuous contact with Plaintiffs' headquarters in Chamblee, Georgia. *Id.*, ¶ 13. Mazur

AO 72A
(Rev.8/82)

telephoned at least once every business day to discuss the King of Prussia facility. *Id.* He also participated in telephone conference calls initiated from Georgia with General Managers from all of Plaintiffs' facilities. *Id.* Mazur also sent e-mails to personnel in the Chamblee headquarters each week, estimated in the several hundreds or thousands. *Id.*, ¶ 14. Mazur also mailed documents to Georgia on a weekly basis. *Id.* Mazur traveled to Georgia twice yearly for managers' meetings. *Id.*, ¶ 15.

### 2. Matt Golonka

In his affidavit, Matt Golonka testified that he is a resident of New Jersey and has never been to Georgia. *See* Golonka Aff., ¶¶ 1-2. He does not own or lease any property in Georgia. *Id.*, ¶ 3. He stated that he has not personally, nor on behalf of HomeCrafters of America, LLC, HomeCrafters of America, Inc., or American Home Crafters, LLC, transacted any business in Georgia. *Id.*, ¶ 7. He has also not been to Georgia in connection with any business for those three companies. *Id.*, ¶ 8. He was first employed by Dixie HomeCrafters in January 2003. *Id.*, ¶ 4. Golonka states that he signed his Employee Confidentiality and Non-Disclosure Agreement in Glen Burnie, Maryland and that he did not receive anything in return for signing the Agreement. *Id.*, ¶¶ 5-6.

Mr. Harris also testified that Matt Golonka had telephone and e-mail communications with the Chamblee, Georgia headquarters in the same manner that Mazur did. *See* Harris

AO 72A
(Rev.8/82)

Aff., ¶¶ 18-19.  Golonka also traveled to the Atlanta area for managers' meetings.  *Id.*, ¶ 20.

Golonka demoted himself to Assistant General Manager on October 31, 2007.  *Id.*, ¶ 21.

### 3. Matt Hess

Matt Hess testified that he was born in Pennsylvania and is a resident of Pennsylvania.  *See* Hess Aff., ¶¶ 1-2.  He lived in the state of Georgia from September 1999 to April 2004.  *Id.*, ¶ 3.  During that time, he owned property in Georgia, which he sold in November 2004.  *Id.*, ¶ 4.  He does not presently own or lease any property in Georgia.  *Id.*, ¶ 5.  He does not presently have a Georgia driver's license, but has one from Pennsylvania. *Id.*, ¶¶ 7-8.  In 2005 and 2006, he filed income tax returns with Pennsylvania.  *Id.*, ¶ 9.

He stated that he has not personally, nor on behalf of HomeCrafters of America, LLC, HomeCrafters of America, Inc., or American Home Crafters, LLC, transacted any business in Georgia.  *Id.*, ¶ 14.  He has also not been to Georgia in connection with any business for those three companies.  *Id.*, ¶ 15.  He was first employed by Dixie HomeCrafters in June 2002.  *Id.*, ¶ 10.  Hess states that he signed his Employee Confidentiality and Non-Disclosure Agreement in King of Prussia, Pennsylvania in December 2004 when he was a Pennsylvania resident and that he did not receive anything in return for signing the Agreement.  *Id.*, ¶¶ 11-13.

Mr. Harris testified that Hess originally became employed with Plaintiffs in June 2002 as a sales representative in Plaintiffs' Atlanta area operations and resided in Georgia

5

until Plaintiffs transferred him to Pennsylvania in 2004.  *See* Harris Aff., ¶ 23.  Between 2004 and October 2007, Hess was Assistant General Manager of the King of Prussia facility and then became General Manager in Baltimore, Maryland, and later King of Prussia.  *Id.*, ¶ 24.  When Hess was General Manager of the two facilities, he had similar telephone and e-mail communications with the Chamblee, Georgia headquarters as Mazur and Golonka. *Id.*, ¶ 25.  Hess also traveled to Atlanta more than once for managers' meetings.  *Id.*

### 4.    Robert Michael Famous

Robert Michael Famous testified that he is a resident of Pennsylvania and has never been to Georgia.  *See* Famous Aff., ¶¶ 1-2.  He does not presently own or lease any property in Georgia.  *Id.*, ¶ 3.  He stated that he has not personally, nor on behalf of HomeCrafters of America, LLC, HomeCrafters of America, Inc., or American Home Crafters, LLC, transacted any business in Georgia.  *Id.*, ¶ 7.  He has also not been to Georgia in connection with any business for those three companies.  *Id.*, ¶ 8.  He was first employed by Dixie HomeCrafters in June 2004.  *Id.*, ¶ 4.  Famous states that he signed his Employee Confidentiality and Non-Disclosure Agreement in King of Prussia, Pennsylvania and that he did not receive anything in return for signing the Agreement.  *Id.*, ¶¶ 5-6.

Mr. Harris testified that Famous worked as a sales representative, Assistant General Manager, and General Manager at the King of Prussia facility.  *Id.*, ¶ 26.  As a sales

6

representative, Famous would participate in conference calls initiated from Chamblee, Georgia three times a year. *Id.*, ¶ 27.

### 5. Kim Golonka

Kim Golonka testified that she is a resident of New Jersey and has never been to Georgia. *See* Golonka Aff., ¶¶ 1-2. She does not presently own or lease any property in Georgia. *Id.*, ¶ 3. She stated that she has not personally, nor on behalf of HomeCrafters of America, LLC, HomeCrafters of America, Inc., or American Home Crafters, LLC, transacted any business in Georgia. *Id.*, ¶ 4. She has also not been to Georgia in connection with any business for those three companies. *Id.*, ¶ 5.

Mr. Harris testified that as a Home Show Coordinator, Kim Golonka would telephone Joe Schuette, Plaintiffs' General Sales Manager at the Chamblee headquarters, once or twice a week to discuss planning and coordination of trade shows. *See* Harris Aff., ¶ 29. She also e-mailed the Chamblee headquarters frequently to get approval for trade show plans, scheduling, and expenses. *Id.*

### 6. Carmine Rego

Carmine Rego testified that he is a resident of Pennsylvania and has never been to Georgia. *See* Rego Aff., ¶¶ 1-2. He does not own or lease any property in Georgia. *Id.*, ¶ 3. He has never been employed by Dixie HomeCrafters, Inc., or GutterGuard, LLC. *Id.*, ¶ 4. He stated that he has not personally, nor on behalf of HomeCrafters of America, LLC,

AO 72A
(Rev.8/82)

HomeCrafters of America, Inc., or American Home Crafters, LLC, transacted any business in Georgia. *Id.*, ¶ 5. He has also not been to Georgia in connection with any business for those three companies. *Id.*, ¶ 6.

7. <u>HomeCrafters of America, LLC, and HomeCrafters of America, Inc.</u>

In his capacity as President of HomeCrafters of America, Inc., Joseph Mazur testified that HomeCrafters of America, LLC, was incorporated in Pennsylvania on June 25, 2007 and existed until July 11, 2007. *See* Mazur President Aff., ¶¶ 1-3. When HomeCrafters of America, LLC, ceased operations, HomeCrafters of America, Inc., was incorporated in Pennsylvania with its principal place of business in King of Prussia, Pennsylvania. *Id.*, ¶¶ 4, 7-8. HomeCrafters of America, Inc., does not rent, lease, or own any property in Georgia and does not have any offices, employees, agents or independent contractors in Georgia. *Id.*, ¶ 9. HomeCrafters of America, Inc., has never done any work in Georgia nor has it solicited for any work. *Id.*, ¶ 11-12. The company also does not advertise in Georgia. *Id.*, ¶ 15. For the ease of discussion, the court will refer only to the surviving corporation, HomeCrafters of America, Inc.

8. <u>Additional Facts</u>

Mr. Harris also testified that Defendants Mazur, Siconolfi, Matt Golonka, Kim Golonka, Hess, and Famous were all employed by Plaintiffs in the King of Prussia, Pennsylvania facility. *See* Harris Aff., ¶ 7. All employees in that facility receive their pay

8

directly from headquarters in Chamblee, Georgia.  *Id.*, ¶ 8.  Office personnel in the King of

Prussia facility forward to the Chamblee headquarters the information necessary to process

payroll.  *Id.*

      Mazur, Matt Golonka, Hess, and Famous each signed a Non-Disclosure Agreement

which contained the following provision:

> This Agreement and any disputes arising under or related thereto (whether for
> breach of contract, tortious conduct, or otherwise) shall be governed by the
> laws of the State of Georgia, without reference to its conflict of law
> principles.  Any legal actions, suits or proceedings arising out of this
> Agreement (whether for breach of contract, tortious conduct, or otherwise)
> shall be brought exclusively in the state or federal courts of Georgia, and the
> parties to this Agreement hereby accept and submit to the personal jurisdiction
> of these Georgia courts with respect to any legal actions, suits or proceedings
> arising out of this Agreement.

Non-Disclosure Agreement, ¶ 6.1.

### C.    Contentions

      All Defendants, save Peter Siconolfi and American Home Crafters, LLC, filed the

instant motion to dismiss or in the alternative motion for judgment alleging that the court

cannot exercise personal jurisdiction over them.  Defendants contend they have no relevant

contacts with Georgia and reside in Pennsylvania or New Jersey.  Defendants also ask that

the court enter declaratory judgment pursuant to Rule 57 that the employment agreements

signed by several of the individual defendants are invalid because those agreements were

signed without any additional compensation as would be required under Pennsylvania law.

9

Plaintiffs respond that the Employee Defendants signed employment agreements with Plaintiffs which contained a forum selection clause and choice of law clause pointing to Georgia, thereby consenting to this court's jurisdiction. In the alternative, Plaintiffs aver that even without the employment agreements, the court could exercise personal jurisdiction over the Employee Defendants because they had innumerable contacts with Georgia while they were employed by Plaintiffs. The Employee Defendants reported to their supervisors in Georgia on almost a daily basis via telephone or e-mail, as well as receiving their regular paychecks from Georgia. Finally, Plaintiffs argue that by seeking affirmative relief in the form of a declaratory judgment, Defendants have waived any challenge they might have had to personal jurisdiction in this court.

## II.  Discussion

### A.  Jurisdiction Premised on Forum Selection Clause in Non-Disclosure Agreement

The forum selection clause in the Non-Disclosure Agreement signed by Mazur, Matt Golonka, Hess, and Famous states:

> This Agreement and any disputes arising under or related thereto (whether for breach of contract, tortious conduct, or otherwise) shall be governed by the laws of the State of Georgia, without reference to its conflict of law principles. Any legal actions, suits or proceedings arising out of this Agreement (whether for breach of contract, tortious conduct, or otherwise) shall be brought exclusively in the state or federal courts of Georgia, and the parties to this Agreement hereby accept and submit to the personal jurisdiction of these Georgia courts with respect to any legal actions, suits or proceedings arising out of this Agreement.

10

Non-Disclosure Agreement, ¶ 6.1.

In *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), the Supreme Court instructed that a forum selection clause should be enforced unless the party opposing enforcement "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause should be invalidated for fraud or overreaching." *Id.* at 15. The fraud noted in *Bremen* means that the inclusion of the clause itself must be the product of fraud or coercion. *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974). Since then, courts have analyzed forum selection clauses under a "mandatory/permissive" test, "enforcing only those clauses that unambiguously designate the forum in which the parties must enforce their rights under the contract." *Florida Polk County v. Prison Health Services*, 170 F.3d 1081, 1083-84 (11th Cir. 1999).

In *Snapper Inc. v. Redan*, 171 F.3d 1249 (11th Cir. 1999), the Eleventh Circuit noted that the cases analyzing the difference between "mandatory" and "permissive" forum selection clauses did "not stand for the simplistic proposition that permissive forum selection clauses are per se unenforceable." *Id.* at 1262 n.24. Considering language which allowed the plaintiff to bring a suit in either the state or federal courts of Georgia and waiving the rights of the defendants to object to those jurisdictions, the court held that the provision gave the plaintiff "an absolute right to choose the forum." *Id.* The court stated:

> the contract may be considered "permissive" in that it specifically allows [the plaintiff] to select the Georgia state courts, the federal district court for the

AO 72A
(Rev.8/82)

> Northern District of Georgia, or any other appropriate jurisdiction. The contract is mandatory as to [the defendants], however, because it requires an absolute submission by them to the jurisdiction of whichever of these fora that [the plaintiff] chooses.

*Id. See also Florida Polk County*, 170 F.3d at 1083-84 (where contract vested jurisdiction in Polk County, Florida, court held that provisions of contract should be construed to give them meaning and to declare such a clause "permissive" and not "mandatory" would render the clause meaningless because suit could already be brought in Polk County).

As it is clear that this is a mandatory forum selection clause and no argument has been made that enforcement would be unreasonable or unjust or that the clause should be invalidated for fraud or overreaching, this would end the analysis but for the fact that the Employee Defendants argue that the Non-Disclosure Agreement is not valid under Pennsylvania law because it was signed after employment had already begun and there was no additional consideration given. Therefore, the court must determine whether Pennsylvania law or Georgia law governs the question of the validity of the Non-Disclosure Agreement containing the forum selection clause.

"In a case founded on diversity jurisdiction, the district court must apply the forum state's choice of law rules." *Federated Rural Elec. Ins. Exchange v. R.D. Moody & Associates, Inc.*, 468 F.3d 1322, 1325 (11th Cir. 2006). Georgia courts follow the traditional rules of lex loci contractus and lex loci delicti. *See Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998). Under the first of these rules, lex loci

contractus, "the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made." *Lloyd v. Prudential Sec., Inc.*, 211 Ga. App. 247, 248 (1993); *see also Southeastern Express Sys., Inc. v. Southern Guaranty Ins. Co.*, 224 Ga. App. 697, 702 (1997) (applying lex loci contractus to choice of law issue). Despite the rule of lex loci contractus, however, Georgia courts recognize that "parties by contract may stipulate that the laws of another jurisdiction will govern the transaction." *Manderson & Assoc., Inc. v. Gore*, 193 Ga. App. 723, 725 (1989). Such stipulations are enforced, unless the law of the other jurisdiction is contrary to Georgia public policy or the chosen jurisdiction has no substantial relationship to the parties or the transaction. *Id.*

For example, in *Scales v. Textron Financial Corp.*, 276 Ga. App. 232 (2005), a lender filed suit against a borrower/guarantor alleging a default on loan agreements. The borrower/guarantor responded that he had been validly released from the guaranty agreements which contained a Rhode Island choice of law provision. *Id.* at 233. The court first noted that Georgia will normally enforce contractual choice of law provisions. *Id.* The court then considered Rhode Island law in determining that the alleged release from the agreements was invalid for lack of consideration. *Id.* at 233-34. Thus, the Georgia court followed the contractual choice of law provision to determine the validity of a contract when the issue of consideration was in dispute.

13

Likewise, here, the Employee Defendants challenge whether the Non-Disclosure Agreements were valid based on an argument that there was no consideration given for having signed the agreements. As in *Scales*, the court will apply the parties' contractual choice of law – Georgia. Unlike Pennsylvania apparently, Georgia law permits the signing of a non-disclosure or non-compete agreement for at-will employees with no additional consideration other than continued employment. *Compare Glisson v. Global Sec. Services, LLC*, 287 Ga. App. 640 (2007) (where employment relationship not terminable at will, continued employment not sufficient consideration for covenant not to compete), *with Breed v. Nat. Credit Assn.*, 211 Ga. 629, 631-33 (1955) (promise of continued employment sufficient consideration for noncompete agreement where employee terminable at will).

For the foregoing reasons, the court finds that based on the contractual stipulation, Georgia law applies to the validity of the Non-Disclosure Agreement and that under Georgia law, the agreement is valid as continued employment is sufficient consideration. Therefore, Defendants Mazur, Matt Golonka, Hess, and Famous have contractually consented to this court's exercise of personal jurisdiction.

### B. Jurisdiction Premised on Conspiracy Allegations

Plaintiffs allege that Defendants Carmine Rego and HomeCrafters of America, Inc., acted in a conspiracy with the Employee Defendants. *See* Cmplt., ¶¶ 18-19 (Mazur, Rego and Matt Golonka "conspired to create a business that would directly compete with

14

Plaintiffs' business" and Mazur, Rego, and Matt Golonka "schemed to steal and use for their financial benefit Plaintiffs' trade secrets and other confidential information"); ¶ 25 (Mazur and Rego have operated HomeCrafters of America, Inc., together).

The Georgia Long-Arm statute authorizes personal jurisdiction over a non-resident defendant who acts in a conspiracy with a defendant over whom the courts can exercise personal jurisdiction. *See generally Rudo v. Stubbs*, 221 Ga. App. 702, 704 (1996) (co-conspirators act as agents of one another when they commit acts in furtherance of the conspiracy).

In *Rudo*, the court noted, however, that the non-resident defendant must have known or should have known that the actions of his co-conspirators would be connected with the forum state. *Id.* at 703-04. If the conspiracy is "targeted at one or more Georgia residents," sufficient understanding by the non-resident defendant is demonstrated. *Id.* at 704. "When the purpose of the conspiracy is to commit an intentional tort against a Georgian, all of the coconspirators are purposefully directing their activities toward Georgia and should reasonably anticipate being haled into court here." *Id. Rudo* cautions, however, that "mere allegations" of conspiracy are not sufficient to impute the acts of co-conspirators to non-resident defendants. *Id.*

Here, the court finds that Plaintiffs' complaint adequately describes allegations of conspiracy against Rego and HomeCrafters of America, Inc. The complaint sets forth that

15

several of Plaintiffs' employees worked with Rego to deliberately plan and take customers and employees from Plaintiffs. Obviously, these actions were directed against a Georgia entity. Thus, based on *Rudo*, the court finds it can exercise personal jurisdiction over Rego and HomeCrafters of America, Inc.

## C.    Remaining Defendants

No allegations in the complaint, however, charge Kim Golonka with conspiracy. The court must determine, therefore, whether Kim Golonka is subject to the jurisdiction of this court under Georgia's Long Arm Statute and the traditional minimum contacts test. Plaintiffs allege that during her employment with Plaintiffs, Kim Golonka was providing trade show services for HomeCrafters of America, Inc., for products and services in direct competition with Plaintiffs. *See* Cmplt., ¶ 27. Plaintiffs terminated Kim Golonka on December 10, 2007, for this conflict of interest. *Id.*

Mr. Harris testified that as a Home Show Coordinator, Kim Golonka would telephone Joe Schuette, Plaintiffs' General Sales Manager at the Chamblee headquarters, once or twice per week to discuss planning and coordination of trade shows. *See* Harris Aff., ¶ 29. She also e-mailed the Chamblee headquarters frequently getting approval for trade show plans, scheduling, and expenses. *Id.*

The Georgia Long Arm statute permits a Georgia court to exercise personal jurisdiction over a nonresident if he "[t]ransacts any business within this state." *See*

O.C.G.A. § 9-10-91(1).  The statute also permits the exercise of jurisdiction if the nonresident "[c]ommits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act." *See id.*, § 9-10-91(2).  The statute goes on to state the jurisdiction may also be had over a nonresident who "[c]ommits a tortious injury in this state caused by an act or omission outside this state, if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." *Id.*, § 9-10-91(3).

Subsection (2) does not apply to Kim Golonka because Plaintiffs do not allege that she has committed a tortious act within the state.  Plaintiffs do allege that she has committed an act outside of Georgia that has caused tortious injury in Georgia, as described in subsection (3).  However, the contacts described by Plaintiffs do not meet the description of "the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state."

The Supreme Court of Georgia's most recent statement of the scope of its long-arm statute makes clear that under O.C.G.A. § 9-10-91(1), a court can exercise personal jurisdiction over a defendant who "transacts business" in the state of Georgia.  *See Innovative Clinical & Consulting Services, LLC v. First National Bank of Ames*, 279 Ga.

672 (2005). The physical presence of the defendant in Georgia is not required. *Id.* Further, the court should not minimize the "intangible contacts" of the defendant with the forum state. *Id.* In *Innovative Clinical*, the Georgia Supreme Court remanded the case for the trial court to determine whether it had personal jurisdiction considering the postal and telephonic contacts between the defendant and the forum state. *Id.*

Since the Supreme Court's decision in *Innovative Clinical*, Georgia courts have explained that

> [j]urisdiction exists on the basis of transacting business in this state if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice.

*See Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 518 (2006). This analysis mimics the minimum contacts and fairness analysis required under the Due Process Clause of the United States Constitution.[1]

---

[1]The court considers two factors when determining whether asserting personal jurisdiction over nonresident defendants would comport with due process. First, the court must decide whether the defendant has "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985). To satisfy minimum contacts for the purposes of specific jurisdiction, the contacts must (1) be related to plaintiff's cause of action; (2) involve some act of "purposeful availment" by the defendant of the privileges of the forum; and (3) be such that the defendant should reasonably anticipate being "haled into court there." *Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994). If the court finds sufficient minimum contacts, it must then determine whether the exercise of personal jurisdiction would offend the "traditional conception of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

In determining the "fairness and reasonableness of a forum's exercise of jurisdiction,

AO 72A
(Rev.8/82)

Plaintiffs allege that Kim Golonka performed acts directed at the Georgia forum –
that is, telephoning her supervisors several times each week to update them on her work and
seeking approval from them for initiatives at home shows. The court finds that these types
of employment activities do not constitute "transacting any business." Kim Golonka simply
is not in the same position as, for example, a businessman who lives in Pennsylvania and
negotiates a contract with a Georgia businessman.

Although the court has not located – and the parties have not directed the court to –
a case applying Georgia law in a similar "employment" context, other case law supports the
conclusion that the contacts Kim Golonka had with this forum do not satisfy Georgia's Long
Arm statute. *Compare International Beauty Products, LLC v. Beveridge*, 402 F. Supp. 2d
1261 (D. Colo. 2005) (where Colorado cosmetic company brought action alleging *inter alia*
fraud and breach of fiduciary duty against two former employees, court determined that
former employee could not be brought to court in Colorado where former employee did not
reside in Colorado, but did receive salary from bank account in Colorado and regularly
communicated with his supervisors in Colorado), *with Dole Food Co., Inc. v. Watts*, 303

---

a court must consider, among other things, the burden on the defendant, the interests of the
forum . . ., and the plaintiff's interest in obtaining relief." *Vermeulen v. Renault, U.S.A.,
Inc.*, 985 F.2d 1534, 1551 (11th Cir. 1993) (internal quotations and citations omitted).
Although there may be some burden in asking a defendant to litigate this case in a foreign
state, the Eleventh Circuit has noted that "modern methods of transportation and
communication" have greatly reduced such burdens. *Sculptchair, Inc. v. Century Arts, Ltd.*,
94 F.3d 623, 632 (11th Cir. 1996).

AO 72A
(Rev.8/82)

F.3d 1104, 1112 (9th Cir. 2002) (not enough to aver that fraudulent time card was submitted by European employees to Dole's California headquarters and that stating that personal jurisdiction may not be "asserted whenever a foreign employee communicates with a corporation's headquarters about foreign operations," however, where foreign employees "are alleged to have communicated directly with Dole's California managers to induce them to implement a new importing system, and, as a consequence, to enter into significant and detrimental contractual arrangements" court construes those communications to have had specific intent to cause injury to Dole in United States). For the foregoing reasons, the court finds that Plaintiffs have not met their burden of showing this court can exercise personal jurisdiction over Kim Golonka, and the court GRANTS only her motion to dismiss for lack of personal jurisdiction.

Siconolfi and American Home Crafters, LLC, have not filed a motion to dismiss challenging the court's jurisdiction, nor have they answered Plaintiffs' complaint. Thus, the court does not address these defendants in this order.

## III. Conclusion

The court GRANTS IN PART AND DENIES IN PART Defendants' motion to dismiss [7]; DENIES Defendants' motion for judgment [8]; and DENIES Defendants' motion for oral argument [19].

The Clerk of the Court is DIRECTED to DISMISS Defendant Kim Golonka.

AO 72A
(Rev.8/82)

**IT IS SO ORDERED** this 5th day of March 2009.


                                       s/ J. Owen Forrester
                                       J. OWEN FORRESTER
                         SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)